Slip Op. 15-88

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME ASSURANCE CO.,<br><br>Defendant. | Before: Leo M. Gordon, Judge<br><br>Consol. Court No. 09-00403 |

**OPINION**

[Summary judgment granted in part and denied in part for Plaintiff; summary judgment granted in part and denied in part for Defendant.]

Dated: August 19, 2015

Beverly A. Farrell, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for Plaintiff, United States. With her on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Barbara S. Williams, Attorney-in-Charge, Amy M. Rubin, Acting Assistant Director, Aimee Lee, Senior Trial Counsel, Edward F. Kenny, Trial Attorney, and Alexander Vanderweide, Trial Attorney. Of counsel on the briefs were Paula S. Smith, U.S. Customs and Border Protection, Office of Assistant Chief Counsel, of New York, NY, and Brandon T. Rodgers, U.S. Customs and Border Protection, Office of Assistant Chief Counsel, of Indianapolis, IN.

Herbert C. Shelley, and Mark F. Horning, Steptoe & Johnson LLP, of Washington, DC, argued for Defendant, American Home Assurance Company.

Gordon, Judge: This consolidated collection action[1] is before the court on cross-motions for summary judgment. See Def.'s Mot. for Summ. J., Consol. Court No. 09-

[1] This action consists of four separate actions - Court Numbers 09-00403, 10-00125, 10-00175, and 10-00343, consolidated under the lead case, Consol. Court No. 09-00403.

00403, ECF No. 59 ("Def.'s Br."); Pl.'s Mot. for Summ. J., Consol. Court No. 09-00403, ECF No. 61 ("Pl.'s Br."). Plaintiff United States ("Government") seeks to recover unpaid antidumping duties from Defendant American Home Assurance Company ("AHAC"), a surety, along with statutory and equitable pre-judgment interest, and post-judgment interest. Payment of duties was secured by numerous single transaction bonds ("STBs") and continuous entry bonds ("CBs") issued by AHAC during the period March 2001 to February 2002. AHAC's liability for the principal amounts of antidumping duties owed on these bonds is not in issue.

For entries in which antidumping duties do not exceed the face value of the bonds (Court Nos. 09-00403 and 10-00343), the Government is seeking statutory pre-judgment interest under 19 U.S.C. § 1505(d) ("post-liquidation interest" or "1505(d) interest") for non-payment of the duties. Over and above any antidumping duties and 1505(d) interest owed, the Government claims statutory pre-judgment interest as an exaction pursuant to 19 U.S.C. § 580 ("580 interest") for having to commence these four collection actions. The Government also seeks equitable pre-judgment interest on any amounts in excess of the face amounts of the relevant bonds to compensate the Government for the loss of the time value of the funds owed. Finally, the Government maintains that it is entitled to post-judgment interest under 28 U.S.C. § 1961.

The court has jurisdiction pursuant to 28 U.S.C. § 1582(2) (suit on a bond) and 1582(3) (suit for collection of unpaid duties)[2] (2012). For the reasons set forth below, the Government's motion for summary judgment is granted in part and denied in part, and AHAC's cross-motion is granted in part and denied in part.

**I. Background**

The subject bonds covered entries of preserved mushrooms and fresh water crawfish tail meat from the People's Republic of China, with each product subject to an antidumping duty order. Declaration of Mark Pessolano in Support of Def.'s Mot. for Summ. J. ("Pessolano Decl."), Consol. Court No. 09-00403, ECF No. 59-1. These bonds secured the importation of the subject merchandise during the period May 4, 2001 through August 6, 2002 by three different importers (American Jianglin, Y&Z International Inc., and JH Brain Trading Inc.). Id. In Court No. 09-00403, AHAC issued both CBs and STBs for the relevant entries. Id. In the other three actions, AHAC issued only CBs for the relevant entries.

In the consolidated actions, AHAC secured the importation of the subject merchandise by issuing the underlying STBs and CBs. The bonds obligated the importers and AHAC to pay, up to the face amounts of the bonds, "any duty, tax or charge and compliance with law or regulations" resulting from activity covered by those bonds. See Compl., Exs. C & L, Court No. 09-00403, ECF No. 4; Compl., Ex. A (copy of printout from

[2] 28 U.S.C. § 1582(2) is the basis for jurisdiction in all four of the actions, whereas 28 U.S.C. § 1582(3) is an additional basis for jurisdiction in Court No. 10-00175.

Customs' Automated Commercial System reflecting Bond No. 100175644 as bond destroyed at the World Trade Center site on Sept. 11, 2001), Court No. 10-00125, ECF No. 4; Compl., Ex. A, Court No. 10-00175, ECF No. 4; Compl., Ex. A, Court No. 10-00343, ECF No. 4.

U.S. Customs and Border Protection ("Customs" or "CBP") liquidated the entries secured by these bonds and assessed antidumping duties on the subject merchandise. For each of those entries, the respective importer received a bill from Customs and failed to pay the duties owed. Because of the importers' defaults, Customs issued demands[3] to AHAC, as the surety, for payment under its bonds. AHAC protested the demands for payment, which Customs ultimately denied. Since AHAC refused to make payment, the Government commenced these actions for the collection of unpaid duties and interest.

AHAC conceded liability for duties on the subject bonds, except for the CB related to Count III in Court No. 10-00343. The parties agree that the principal amounts owed in Court Nos. 10-00125 and 10-00175 are $1,400,000 and $800,000 respectively. The parties disagree as to the principal amounts owed in the other two actions. The Government claims that $4,989,085.89 is the principal amount owed in Court No. 09-00403, while AHAC maintains that $4,489,085.89 is owed. The disagreement centers on Customs' treatment of a partial payment of $500,000. Customs intends to allocate that payment in accordance with 19 C.F.R. § 24.3a, which directs that any late payment

[3] Customs appears to have made demands on AHAC for payment (across the four consolidated actions) beginning in December 2003 and ending in December 2009.

received first be applied, on an entry by entry basis, to interest charges, i.e., 1505(d) interest, equitable pre-judgment interest, and 580 interest, and then finally to the delinquent principal itself. AHAC does not dispute that the $4,989,085.89 was the original amount owed, but maintains that the partial payment should be fully credited against principal, not applied to any interest that may be owed.

With respect to the CB related to Count III in Court No. 10-00343, the parties reached an understanding that "$50,000 . . . would be the number used in determining the applicable amount of interest, if any, to be awarded." Jt. Letter, Court No. 10-00343, ECF No. 17. Subsequently, AHAC sent Customs a check for $50,000 in payment for the moneys related to Count III. See Pl.'s Resp. to Court's Request for Information, Confid. Att. at 29, ECF No. 113-2. The Government claims that $70,645.34 is the principal amount owed in Court No. 10-00343, whereas AHAC maintains that $20,645.34 is owed. The disagreement again centers on the allocation, interest first or principal first, of the $50,000 paid by AHAC with respect to Count III in the 10-00343 action. In both instances Customs is holding the payments in suspense accounts awaiting resolution of the pre-judgment interest issues.

## II. Standard of Review

USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable

inferences in its favor. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2. Because the dispositive issues are solely legal and the material facts are uncontroverted, summary judgment is appropriate. See 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 2725 (3d ed. 2015); see also Dal-Tile Corp. v. United States, 24 CIT 939, 944, 116 F. Supp. 2d 1309, 1314 (2000) (citing Marathon Oil Co. v. United States, 24 CIT 211, 214, 93 F. Supp. 2d 1277, 1279-80 (2000)).

## III. Discussion

This consolidated action involves whether pre- and post-judgment interest, if any, are due in a collection action by the Government for non-payment of antidumping duties on underlying import transactions that were secured by basic importation and entry bonds. The court begins with the issue of statutory pre-judgment interest under 19 U.S.C. § 1505(d) and 19 U.S.C § 580. The court then examines the appropriateness of an award of equitable pre-judgment interest in addition to statutory pre-judgment interest. The court next addresses the effect of AHAC's prior payments. Lastly, the court considers if an award of post-judgment interest is warranted.

### A. 1505(d) Interest

An importer is required to pay antidumping duties assessed by the United States pursuant to 19 U.S.C. § 1673. A surety who underwrites a customs bond agrees to joint and several liability with the importer for any duties, fees, and charges (including interest) owed, capped at the face amount of the bond. 19 C.F.R. § 113.62(a) (2015) (principal

and surety jointly and severally agree to pay all "duties, taxes, and charges . . . legally fixed and imposed on any entry" secured by an STB or CB); see also United States v. Washington Int'l Ins. Co., 25 CIT 1239, 1241-42, 177 F. Supp. 2d 1313, 1316 (2001) ("Normally, a surety is liable for any duties, fees, and interest owed up to the face amount of the surety bond and any further liability for increased payment usually arises in a litigation context."). A surety's obligation arises at the time of the importer's breach, unless the parties agree otherwise. See United States v. Cocoa Berkau, Inc., 990 F.2d 610, 614 (Fed. Cir. 1993).

19 U.S.C § 1505 governs the payment of duties and fees on entries of imported merchandise. Once Customs liquidates or reliquidates an entry, any duties and fees (including pre-liquidation interest) due and owing are payable 30 days after Customs issues a bill. 19 U.S.C. § 1505(b). If a bill is not paid in full within the 30-day grace period, the unpaid balance is considered delinquent and subject to "post-liquidation interest." Id. § 1505(d). Post-liquidation interest accrues in 30-day periods from the date of liquidation or reliquidation until the balance is paid in full, excluding the 30-day period in which the bill is paid. Id.

Here, CBP liquidated the entries secured by AHAC's bonds and assessed antidumping duties on the subject merchandise. When the importers failed to pay the dumping duties owed, CBP made multiple demands on AHAC for payment. On each occasion, CBP notified AHAC of the Government's intent to seek post-liquidation interest. See Pl.'s Compl. Ex. 4, Court No. 09-00403, ECF No. 4 (citing Washington Int'l Ins. Co.,

25 CIT at 1241-42, 177 F. Supp. 2d at 1316). AHAC filed protests on Customs' demands for payment of the duties and any attendant interest, all of which CBP subsequently denied. AHAC then had the option to challenge those demands, including the charge for post-liquidation interest, by commencing an action under 28 U.S.C. § 1581(a). AHAC chose not to commence suit.

In Court Nos. 09-00403 and 10-00343, the duties owed do not exceed the face amounts of the relevant bonds. The Government contends that, under these circumstances, 1505(d) interest continues to accrue and constitutes part of the unpaid balance for which the individual importer, and in turn AHAC, as surety, are liable. The Government also argues that CBP's demands (including payment of post-liquidation interest) became final and conclusive in accordance with 19 U.S.C. § 1514 when AHAC failed to contest its denied protests. Thus, the question before the court is whether the final and conclusive language of § 1514 precludes AHAC from asserting an affirmative defense in a Government enforcement action to collect post-liquidation interest under § 1505(d).

Section 1514 provides that any Customs decision (enumerated in one of the seven categories in § 1514) must be protested or it becomes "final and conclusive upon all persons (including the United States and any officer thereof)." 19 U.S.C. § 1514(a). Section 1514 further provides that if a protest is filed, and Customs denies the protest, the protesting party may challenge the denial in the U.S. Court of International Trade,

under 28 U.S.C. § 1581(a). Id. Failure to commence a 1581(a) action after a protest is denied also renders Customs' decision "final and conclusive." Id.

It is well established that all decisions by CBP relating to an entry merge into the liquidation, which, in turn, becomes final and conclusive unless challenged in accordance with § 1514. See Volkswagen of America, Inc. v. United States, 532 F.3d 1365, 1370 (Fed. Cir. 2008) (citations omitted). The finality of those decisions applies to both importer duty recovery suits and to Government enforcement actions. See United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550 (Fed. Cir. 1997). This action, however, does not raise issues related to the liquidation of the subject entries. Rather, it involves CBP's post-liquidation decision to charge 1505(d) interest on unpaid antidumping duties pursuant to a demand for payment on a bond.

AHAC maintains that the bond language does not commit it to pay post-liquidation interest. See Def.'s Resp. Br. In Opp. to Pl.'s Mot. for Summ. J. 7, ECF No. 69. In this regard, AHAC maintains that "a surety's concession of liability for the principal amount owed [(the duties)] does not waive any defenses to the government's claim for interest which is made on statutory, not contractual grounds." Id. 7-8. As to § 1514, AHAC contends that the final and conclusive language does not preclude it from asserting defenses as a shield in a collection action for 1505(d) interest. AHAC argues that CBP's decision to seek 1505(d) interest was made post-liquidation, and therefore is not protestable under § 1514. The court disagrees.

Among the protestable decisions set forth in § 1514 are CBP decisions that involve "charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." 19 U.S.C. § 1514(a). It is generally viewed that interest on duties comes within the description of a charge or exaction. See Castelazo & Assocs. v. United States, 126 F.3d 1460, 1462 (Fed. Cir. 1997); Syva Co. v. United States, 12 CIT 199, 202-03, 681 F. Supp. 885, 888 (1988) (interest on delinquent payment of liquidated regular Customs' duties protestable as charge or exaction); American Hi-Fi Int'l, Inc. v. United States, 19 CIT 1340, 1341-45 (1995) (19 U.S.C. § 1677g pre-liquidation interest on underpayments of antidumping duties constitutes charge or exaction protestable under § 1514). The statute does not contain an exception for "charges or exactions" arising after liquidation, nor "charges or exactions" arising on particular kinds of duties. The distinctions drawn by AHAC do not appear in § 1514's broad "charges or exactions of whatever character" language. See 19 U.S.C. § 1514(a).

Furthermore, the basic importation and entry bonds at issue statutorily and contractually secure the payment of "duties" and any attendant interest. They do not distinguish between interest on a delinquent payment of regular customs duties and interest on a delinquent payment of other duties, such as antidumping duties. They also do not distinguish between pre-liquidation and post-liquidation interest. See Compl., Exs. C & L, Court No. 09-00403, ECF No. 4; Compl., Ex. A (copy of printout from Customs' Automated Commercial System reflecting Bond No. 100175644 as bond destroyed at the World Trade Center site on Sept. 11, 2001), Court No. 10-00125, ECF No. 4; Compl.,

Ex. A, Court No. 10-00175, ECF No. 4; Compl., Ex. A, Court No. 10-00343, ECF No. 4. The consequence for non-payment of those "other duties" is the same here as it would be for the non-payment of regular customs duties – the obligation to pay post-liquidation interest. Because there is no distinction in the statute or the bond agreements, as AHAC contends, 1505(d) interest constitutes a "charge or exaction" protestable under § 1514.

AHAC also contends that a Customs' decision must be substantive in nature for it to be protestable. Since 1505(d) interest is determined by using "'an automatic interest calculation model,'" Def.'s Reply in Supp. of Def.'s Mot. for Summ. J. 13 & Att. D, ECF No. 74, AHAC argues that CBP did not engage in any substantive decision-making. Consequently, a demand for 1505(d) interest is not a protestable event, and falls outside the scope of § 1514's final and conclusive language.[4] Once again, the court disagrees.

This is not a circumstance where CBP took "no active role whatsoever." U.S. Shoe Corp. v. United States, 114 F.3d 1564, 1569 (Fed. Cir. 1997). Here, CBP made a substantive determination that involved "the application of pertinent law and precedent to a set of facts" as opposed to taking a passive role where "no analysis" was performed, "no directives or decisions" were issued, or "no liability" was imposed. Id. CBP had to determine that the importers on the underlying entries failed to pay the duties owed. CBP then needed to (1) identify the applicable bonds, (2) determine whether the duties owed exceeded the face amount of the bonds, (3) determine if 1505(d) interest was applicable,

[4] The implicit assumption in AHAC's argument is that 1505(d) interest is a charge or exaction, and that but for the automatic nature of the calculation of 1505(d) interest would be protestable under § 1514.

and (4) then make a demand on the surety for non-payment of the duties by the importers, plus any applicable interest, including 1505(d) interest. AHAC is correct that there is an automatic aspect to 1505(d) interest. However, that automaticity occurred only after Customs had undertaken an analysis and made the substantive decisions that supported its demands for payment. Cf. Dart Export Corp. v. United States, 43 CCPA 64, 69-70 (1956) (describing substantive decision-making relating to the assessment of duties and charges in the context of CBP's prior organizational structure).

Since AHAC failed to contest its denied protests, CBP's charge of 1505(d) interest is final and conclusive pursuant to § 1514. As a result, AHAC is precluded from asserting any defenses to its liability for 1505(d) interest. Accordingly, AHAC shall pay the Government interest pursuant to 19 U.S.C. § 1505(d) on certain entries in Court No. 09-00403 and all entries in Court No.10-00343 up to the face amount of the bonds covering those entries.

**B. 580 Pre-Judgment Interest**

The Government requests an award of statutory pre-judgment interest under 19 U.S.C. § 580. Section 580 provides that, in suits brought by the Government on a bond for the recovery of duties, "interest shall be allowed, at a rate of 6 per centum a year, from the time when said bond[] became due." 19 U.S.C. § 580. AHAC disputes the Government's entitlement to 580 interest arguing, among other things, that the statute applies to only regular duties and not antidumping duties.

The U.S. Court of Appeals for the Federal Circuit recently resolved the issue of whether the Government may recover 580 interest on dumping duties in a companion case involving the same litigants, but different bonds. See United States v. Am. Home Assurance Co., 789 F.3d 1313, 1324-28 (2015) ("Am. Home Assurance I"). There the Federal Circuit held, "as a matter of law, that 19 U.S.C. § 580 provides for interest on bonds securing both traditional customs duties and antidumping duties." Id. at 1324.

There are no issues involving § 580 that distinguish this action from American Home Assurance I. Given that binding precedent, AHAC is liable for statutory pre-judgment interest on the unpaid antidumping duties secured by the subject bonds. In accordance with § 580, that interest will run at a rate of 6% per annum from the date the subject bonds became due, which is the date of the Government's first formal demand for payment. See 19 C.F.R § 113.62(a)(ii) (2014).

**C. Equitable Pre-Judgment Interest**

The Government also seeks an award of equitable pre-judgment interest on the unpaid duties. Generally, pre-judgment interest "compensate[s] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987); see United States v. Goodman, 6 CIT 132, 140, 572 F. Supp. 1284, 1289 (1983) (Pre-judgment interest "is awarded to make the wronged party whole."). An award of pre-judgment interest is not limited by the

face amount of the subject bond. See United States v. U.S. Fid. & Guar. Co., 236 U.S. 512, 530-31 (1915).

Here, there is a statute, 19 U.S.C § 580, providing for pre-judgment interest in a Government enforcement action on a bond. Am. Home Assurance I, 789 F.3d at 1324-28. That would appear to resolve the matter because equity operates in the absence of a statute governing an award of pre-judgment interest, thereby resulting in the denial of the Government's request for equitable relief. However, the Federal Circuit has suggested that an award under § 580 may "alter[] the landscape" in this type of action. Id. at 1330. The Court stated that the Court of International Trade, as the trial court, should have "the opportunity to consider the effect of an award of § 580 interest and whether dual sources of interest are proper," with "full compensation [for the injured party, the Government,] being the court's overriding concern." Id. (quoting United States v. Am. Home Assurance Co., 38 CIT ___, ___, 964 F. Supp. 2d 1342, 1356 (2014) ("Am. Home Assurance II")) (internal quotation marks omitted).

In determining whether to award equitable pre-judgment interest, the court is to exercise its discretion, United States v. Imperial Food Imps., 834 F.2d 1013, 1016 (Fed. Cir. 1987), guided "by traditional judge-made principles." City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 194 (1995). When bonds secure the Government in the payment of antidumping duties, considerations that affect an award of equitable pre-judgment interest include: "[1] the degree of personal wrongdoing on the part of the defendant, [2] the availability of alternative investment opportunities to the plaintiff,

[3] whether the plaintiff delayed in bringing or prosecuting the action, and [4] other fundamental considerations of fairness." United States v. Great Am. Ins. Co. of N.Y., 738 F.3d 1320, 1326 (Fed. Cir. 2013) (quoting Osterneck v. Ernst & Whitney, 489 U.S. 169, 175-76 (1989)) (internal quotation marks omitted). Since the court has awarded the Government statutory pre-judgment interest under 19 U.S.C. § 580, it must also "consider the effect" of that award and "whether dual sources of interest are proper." Am. Home Assurance I, 789 F.3d at 1338 (quoting Am. Home Assurance II, 38 CIT at ___ 964 F. Supp. 2d at 1356 (internal quotation marks omitted) (citations omitted)).

AHAC contends that equitable considerations do not favor an award of pre-judgment interest in this action. In particular, AHAC maintains that it did not engage in dilatory conduct by "unjustly withhold[ing] payment [of the dumping duties] after being notified of the default of the [bond] principal[s]." Def.'s Resp. Br. in Opp. to Pl.'s Mot. for Summ. J. 9 (quoting U.S. Fid. & Guar. Co., 236 U.S. at 530-31 (emphasis in original), ECF No. 69. It also argues that the Government engaged in unnecessary delay by waiting until a few days prior to the expiration of the applicable statute of limitations to commence this action, and that its factual and legal positions in defending this action were reasonable. Lastly, AHAC argues that any award of equitable pre-judgment interest is precluded by the Continued Dumping and Subsidy Offset Act of 2000, 19 U.S.C. § 1675c (2000) ("CDSOA").[5] Specifically, AHAC contends that the subject antidumping duties

[5] Pub. L. No. 106-387, § 1001-03, 114 Stat. 1549, 1549A-72-75, 19 U.S.C. § 1675c (2000), repealed by Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).

once collected are deposited into special non-interest bearing accounts for the benefit of affected domestic producers and not into the general Treasury of the United States. Consequently, the Government did not lose the use of any money and is not entitled to additional compensation in the form of equitable pre-judgment interest.

The Government did not unreasonably delay bringing or prosecuting this action. The Government filed its complaints in the four consolidated actions from September 2009 through November 2010. These filings ranged approximately from 6 to 27 months after the Government's final demands for payment and from 3 to 14 months prior to running of the applicable six-year statute of limitations under 28 U.S.C. § 2415. Although the Government may appear lax in commencing these actions from Defendant's perspective, each of them was nonetheless commenced within the applicable statute of limitations. See United States v. Millenium Lumber Distribution Co., 36 CIT ___, ___, 899 F. Supp. 2d 1340, 1344 n.6 (2012) (quoting 28 U.S.C. § 2415(a) ("A complaint to recover liquidated damages must be filed 'within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later.'"). Even though the Government's timing may not have been optimal, the court cannot say that the Government unreasonably delayed the bringing of this action. Additionally, the docket of the consolidated lead action, Court No. 09-00403, reveals a long and involved litigation with many filings and numerous requests for extensions of time, but does not reflect that

the Government was the source of any unreasonable delay. Lastly, AHAC has never paid the outstanding duties, with one exception, despite Customs' numerous requests.

While those factors may favor an award of equitable interest, the Government's entitlement to statutory pre-judgment interest under 19 U.S.C. § 580 outweighs those considerations. Customs' demands for payment apparently began in December 2003 and ended in December 2009. Equitable pre-judgment interest, if applicable, would run at the rate provided in 28 U.S.C. § 2644 and in accordance with 26 U.S.C. § 6621. See United States v. Golden Gate Petroleum Co., 30 CIT 174, 182-83 (2006) (citing Goodman, 6 CIT at 140, 572 F. Supp. at 1290). With December 2003 as a starting point and ending with the date of issuance of the judgment in this action, the range of applicable Federal short term funds rates under 26 U.S.C. § 6621 is 0.16% to 5.16%, with an average rate of 1.70%, and a median rate of 0.74%.

The 6% rate under § 580 far exceeds the applicable rates at which the Government would receive equitable interest. Section 580 interest more than fairly compensates the Government for the time value of the unpaid duties. To award equitable pre-judgment interest in these circumstances would overcompensate the Government. The court therefore declines to award equitable pre-judgment interest to the Government in addition to § 580 interest.[6]

[6] Because equitable pre-judgment interest is not warranted here, the court does not reach the issue of the effect of the CDSOA on the award of that interest.

**D. Effect of AHAC's Partial Duty Payments**

AHAC maintains that Customs should apply AHAC's payments of $500,000 in Court No. 09-00403 and $50,000 in Court No. 10-00343 first towards the principal amounts owed, and then interest. AHAC anticipates an appeal of the judgment in this action as there was in the companion case, so AHAC is seeking to minimize the impact of any interest that may continue to accrue during that period. See Reply in Supp. of Def.'s Mot. for Permission to Make Deposit and for Entry of Final J. 1-4 (Apr. 11, 2014), ECF No. 90.

Unfortunately for AHAC, Customs by regulation must apply AHAC's payments to interest before principal. Specifically, "[i]n the case of any late payment, the payment received will first be applied to the interest charge on the delinquent principal amount and then to the payment of the delinquent principal amount." 19 C.F.R. § 24.3a(c)(4). AHAC identifies no legal basis for the court to issue a judgment contrary to the express terms of this regulation. Accordingly, in awarding statutory interest to the Government the court will not direct Customs to allocate AHAC's payments differently than that provided for in 19 C.F.R. § 24.3a(c)(4).

**E. Post-Judgment Interest**

Lastly, the Government seeks an award of post-judgment interest. 28 U.S.C. § 1961(a) provides that post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Section 1961 does not directly apply to judgments rendered by this Court. See 28 U.S.C. § 1961(c)(4). However, the award of

post-judgment interest by the Court of International Trade is predicated on 28 U.S.C. § 1585, which states that the Court "posses[es] all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." United States v. Great Am. Ins. Co. of New York, 738 F.3d 1320, 1326 (Fed. Cir. 2013) (extending power to award post-judgment interest under 28 U.S.C. § 1961 to Court of International Trade pursuant to 28 U.S.C. § 1585).

Post-judgment interest is not discretionary, but rather is available as a matter of right to prevailing parties. United States v. Servitex, Inc., 3 CIT 67, 68 n.5, 535 F. Supp. 695, 696 n.5 (1982); see also Great Am. Ins. Co., 738 F.3d at 1326. Under § 1961(a) post-judgment interest is calculated from the date of entry of the judgment. This is a civil case – a suit on a bond for the collection of unpaid duties – that has resulted in a money judgment against AHAC. Accordingly, the Government is entitled to post-judgment interest at the rate provided for in § 1961.

## IV. Conclusion

Based on the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part, and Defendant's motion for summary judgment is granted in part and denied in part. Judgment will enter accordingly.

/s/ Leo M. Gordon
Judge Leo M. Gordon

Dated: August 19, 2015
New York, New York